IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83341-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| QUINTON MARQUETTE HARRIS, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. — At a resentencing hearing, the trial court recalculated Quinton Harris's offender score by (1) removing a point for a Blake[1] offense and (2) adding a point for an offense Harris pleaded guilty to in December 2020, after his original judgment and sentence was entered. As a result, Harris's offender score remained the same. On appeal, Harris contends that by including the December 2020 conviction when recalculating his offender score, the trial court deprived him of due process and unlawfully chilled his right to appeal. We disagree and affirm.

FACTS

On October 9, 2020, a jury found Harris guilty of one count of felony violation of a court order with a domestic violence designation.[2] Later that

---

[1] State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021) (holding that Washington's felony drug possession statute, former RCW 69.50.4013, was unconstitutional).

[2] The jury also found Harris guilty of two gross misdemeanor counts of violation of a court order with domestic violence designations. Those counts are not at issue in this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

month, the trial court sentenced Harris to 51 months' confinement, the bottom of the standard range. Harris's standard range was based on an offender score of "7," which included one point for a 2019 drug possession offense (Blake offense).

Harris appealed. See State v. Harris, 20 Wn. App. 2d 153, 498 P.3d 1002 (2021). He raised two arguments on appeal: (1) that the trial court erred by admitting certain evidence at Harris's trial, and (2) that he was entitled to resentencing pursuant to Blake. Harris, 20 Wn. App. 2d at 155.

In August 2021, while that appeal was pending, Harris filed a CrR 7.8 motion seeking resentencing pursuant to Blake. He argued that the trial court should vacate the October 2020 judgment and sentence "and resentence [him] without the added point from the [Blake offense]." The State filed a sentencing memorandum in which it agreed that Harris's Blake offense should be excluded from Harris's offender score. The State also pointed out, however, that in December 2020, i.e., after Harris's original judgment and sentence was entered, Harris pleaded guilty in district court to one count of violating a court order with a domestic violence designation. The State argued that, as a result, Harris's offender score "remains unchanged and his standard sentencing range is also the same as the time of the original sentencing." The State asked the trial court to impose the same, 51-month, bottom-end sentence it had originally imposed.

In his defense sentencing memorandum, Harris conceded that he "has one new conviction which scores." But he urged the trial court to impose an exceptional sentence below the standard range based on the victim's having initiated the contact that was the basis for his judgment and sentence.

2

In September 2021, the trial court held a resentencing hearing. The court declined to impose an exceptional sentence and instead imposed the same, 51-month sentence it had originally imposed. The court entered a new judgment and sentence on September 29, 2021.

On November 22, 2021, after the trial court had already resentenced Harris, we issued our opinion in Harris's first appeal. We rejected Harris's challenge to the trial court's admission of evidence but accepted the State's concession that Harris was entitled to resentencing pursuant to Blake.[3] Harris, 20 Wn. App. 2d at 156, 160.

Meanwhile, Harris initiated the instant appeal from the revised judgment and sentence.[4]

ANALYSIS

Harris contends that the trial court erred by including a point in his offender score for his December 2020 conviction. The State counters, as an initial matter, that Harris waived this claim of error by failing to object below. See RAP 2.5(a) (appellate court may refuse to review any claim of error that was not

---

[3] It appears that the parties neither informed us that Harris had already been resentenced nor obtained our permission to enter the revised judgment and sentence. To the extent that such permission was required, it is hereby granted *nunc pro tunc* to the date of entry of the revised judgment and sentence. See RAP 7.2(e)(2) ("If the trial court determination [of a postjudgment motion] will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision.").

[4] The State represents in its respondent's brief that it filed a notice of cross-appeal, and it now moves to withdraw its cross-appeal. No notice of cross-appeal appears in the record before this court. Nevertheless, to the extent that a cross-appeal was filed, the State's motion to withdraw it is hereby granted.

raised in the trial court). But Harris challenges his offender score on constitutional grounds, and the record is sufficient to determine the merits of Harris's constitutional challenge, which, if successful, had practical and identifiable consequences on the calculation of his offender score. Therefore, we exercise our discretion to reach the merits of Harris's appeal. See RAP 2.5(a)(3) ("[A] party may raise . . . for the first time in the appellate court . . . [a] manifest error affecting a constitutional right."); State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) (asserted constitutional error is manifest if it " 'had practical and identifiable consequences in the trial of the case.' " (internal quotation marks omitted) (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999))); see also State v. Blazina, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (RAP 2.5(a) is discretionary).

Turning to the merits, Harris argues that, by including the December 2020 conviction in his offender score, the trial court (1) deprived him of due process and (2) unlawfully chilled his constitutional right to appeal. We disagree.

Due Process

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution both prohibit the state from depriving any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV; CONST. art. I, § 3. Our analysis of due process claims "follows that of the federal constitution because the state constitution does not afford broader due process protection than the Fourteenth Amendment to the United States Constitution." In re Estate of Hambleton, 181 Wn.2d 802, 823, 335 P.3d 398

4

(2014); see also In re Pers. Restraint of Dyer, 143 Wn.2d 384, 394, 20 P.3d 907 (2001) ("Washington's due process clause does not afford a broader due process protection than the Fourteenth Amendment.").

"The due process clause confers both substantive and procedural protections." State v. Beaver, 184 Wn.2d 321, 332, 358 P.3d 385 (2015). "[T]he procedural component of the due process clause requires that government action be implemented in a fundamentally fair manner." Id. "The substantive component of the due process clause bars wrongful and arbitrary government conduct, notwithstanding the fairness of the implementing procedures." Id.

Although Harris does not specify the nature of his due process challenge, it appears to be a substantive one. Specifically, Harris does not challenge the procedural aspects of his resentencing but argues that, by including a point in his offender score for the December 2020 conviction, the trial court wrongfully punished him for challenging his sentence based on Blake.

Penalizing a defendant for successfully pursuing an appeal or collateral remedy violates due process. State v. Brown, 193 Wn.2d 280, 288, 440 P.3d 962 (2019). However, due process is not offended by "all possibilities of increased punishment" following a successful appeal or collateral attack, but "only those that pose *a realistic likelihood of vindictiveness*." Id. at 294 (emphasis added) (citing Blackledge v. Perry, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)); see also Chaffin v. Stynchcombe, 412 U.S. 17, 35, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) ("The rendition of a higher sentence . . . upon

retrial does not . . . offend the Due Process Clause so long as . . . the second sentence is not . . . shown to be a product of vindictiveness.").

Here, Harris points to nothing in the record that reflects any likelihood of vindictiveness on the trial court's part.[5]  Furthermore, the trial court imposed the *same sentence* it imposed before, not a harsher one.  Cf. Brown, 193 Wn.2d at 293-94 (holding that no presumption of vindictiveness applies "when the total sentence upon resentencing is not greater than the original sentence imposed").  And, the trial court's inclusion of Harris's December 2020 conviction in his offender score was not only acceded to by both parties, it was mandated by the Sentencing Reform Act of 1981.  See RCW 9.94A.525(22) ("The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. . . . Prior convictions that were not included in criminal history or in the offender score shall be included upon any resentencing to ensure imposition of an accurate sentence.").  Harris's due process claim fails.

<u>Chilling of Right to Appeal</u>

Harris next argues that reversal is required because the trial court "chilled" his right to appeal by including his December 2020 conviction in his offender score.  See CONST. art. I, § 22 (guaranteeing criminal defendants the right to

---

[5] In his reply brief, Harris asserts that the trial court "punished [him] for succeeding on his direct appeal" and that he "was punished for securing a favorable outcome on appeal."  But that cannot have been the case given that the trial court resentenced him *prior to* the resolution of his appeal.

appeal).  Harris relies on State v. Sims, 171 Wn.2d 436, 256 P.3d 285 (2011), and In re Personal Restraint of Cranshaw, 196 Wn.2d 325, 472 P.3d 989 (2020), arguing that the "same principles" that governed those cases also "govern [his] case."  We disagree.

In Sims, the trial court granted Jack Sims a special sex offender sentencing alternative (SSOSA) sentence over the State's objection.  171 Wn.2d at 440.  The sentence included a condition banishing Sims from Cowlitz County for life.  Id.  Upon Sims's appeal, the State conceded that the geographical restriction was unconstitutional.  Id.

Additionally, but "[w]ithout filing a notice of cross appeal, the State raised an additional issue in its reply brief, arguing that the case should be remanded for reconsideration of the SSOSA sentence."  Id.  This court accepted the State's concession as to the geographical restriction and remanded for resentencing.  Id. at 441.  In doing so, we held that the trial court could, at its discretion, "either . . . reimpose a SSOSA with constitutional[ ] . . . conditions *or deny a SSOSA altogether.*"  Id. (emphasis added).

On further appeal to the Supreme Court, Sims argued that this court erred by remanding for a full resentencing—including reconsideration of the previously granted SSOSA—rather than for the limited purpose of revising the unlawful geographic restriction.  Id. at 441.  Our Supreme Court agreed.  Significantly, its analysis of the issue was governed by RAP 2.4(a), which states that the appellate court will grant affirmative relief to a respondent that has not filed a notice of appeal only "if demanded by the necessities of the case."  Sims, 171

Wn.2d at 442. The Supreme Court held that the necessities of the case *did not* demand granting the State affirmative relief despite its not having filed a cross-appeal, based on "[s]everal factors": "the potential chilling effect on defendants' constitutional right to appeal, the fact that this sentencing condition is separable from the sentence, and the fact that the objective of the challenged condition . . . can be achieved through a narrowly tailored condition." Id. at 449. With regard to the chilling effect on the right to appeal, the Supreme Court observed that "SSOSA sentences are of . . . high value to defendants," and defendants "would be unlikely to risk appealing even abhorrently unlawful or unconstitutional sentencing conditions for fear of risking the underlying SSOSA sentence." Id. at 447.

In Cranshaw, a jury found Ira Cranshaw guilty of several crimes committed against two victims, B.B. and S.H. 196 Wn.2d at 326. On appeal, this court affirmed Cranshaw's convictions as to S.H. but reversed and remanded for a new trial on all counts involving B.B. Id.

On remand, the trial court resentenced Cranshaw on the affirmed counts involving S.H. Id. Later, after a second jury found Cranshaw guilty of various counts involving B.B., the trial court separately sentenced Cranshaw on those counts. Id. at 327. As a result of Cranshaw's having been sentenced separately on the counts involving S.H. and the counts involving B.B., he received a substantially longer sentence than he would have had he been sentenced on all of his convictions on the same day. Id. at 328. Cranshaw filed a personal restraint petition challenging his sentence, and our Supreme Court granted the

petition, explaining, "By being sentenced in this manner, Mr. Cranshaw was effectively punished for a direct appeal that succeeded in obtaining a new trial on several of the charges." Id. The court thus held that "[i]n these unique circumstances," Cranshaw was entitled to be resentenced as if all convictions were sentenced in a single proceeding. Id.

Both Sims and Cranshaw are readily distinguishable from the case at bar. Unlike Sims, this case does not present a question of whether the necessities warrant granting a respondent affirmative relief under RAP 2.4(a). And unlike Cranshaw, this case does not involve a defendant who received a *harsher* sentence following a successful appeal. More fundamentally, unlike *both* Sims *and* Cranshaw, this is not a case in which the *sole* change in circumstances between the initial sentencing and resentencing was, or directly resulted from, the defendant's successful appeal. Instead, unlike the defendants in Sims and Cranshaw, Harris was convicted of an *additional crime* between his two sentencings—indeed, a crime involving the same victim. Sims and Cranshaw do not require reversal.[6] Cf. Brown, 193 Wn.2d at 288 ("Generally, a trial judge may

---

[6] Harris argues in his reply brief that the inclusion of his December 2020 conviction in his offender score also "conflicts with the underlying reasoning in Blake: to remedy racially disparate practices at sentencing." In support, Harris points out that in Blake, our Supreme Court acknowledged that Washington's felony drug possession statute "has affected thousands upon thousands of lives, and its impact has hit young men of color especially hard." 197 Wn.2d at 192. But Harris raises his Blake-based argument for the first time in his reply brief. Cf. City of Spokane v. White, 102 Wn. App. 955, 963, 10 P.3d 1095 (2000) ("A reply brief is generally not the proper forum to address new issues because the respondent does not get an opportunity to address the newly raised issues."). And in any case, Harris takes the Supreme Court's statement out of context. The court did acknowledge the undeniable impact of Washington's strict liability drug possession statute. But it did so in explaining why it was "confident" that the

impose a new sentence that is greater or less than the sentence originally imposed based on events subsequent to the first trial that may throw new light on the defendant's life, health, habits, conduct, and mental and moral propensities.").

We affirm.[7]

_Smith, A.C.J._

WE CONCUR:

_Chung, J._          _Bowman, J._

---

legislature was not ignorant of the court's prior decisions construing the statute as a strict liability one. Blake, 197 Wn.2d at 191-92. Blake does not support the proposition that the trial court erred in accounting for all of Harris's non-Blake offenses when it resentenced him.

[7] Because we conclude that the trial court did not err by including the December 2020 conviction in Harris's offender score, we need not reach the State's invited error argument. See State v. Tatum, 23 Wn. App. 2d 123, 128, 514 P.3d 763 (2022) (invited error doctrine does not apply when "there was no error to invite").