IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84893-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| TOMMIE DESHAWN MITCHELL, | UNPUBLISHED OPINION |
| Appellant. | |

DÍAZ, J. — Tommie Deshawn Mitchell appeals his resentencing for multiple counts of assault in the first degree, arguing the trial court violated the real facts doctrine by considering evidence not admitted at trial or otherwise appropriately before the court. Alternatively, Mitchell argues he was denied effective assistance of counsel by his resentencing counsel's failure to object to the new evidence. Finally, Mitchell claims the resentencing court failed to properly consider his indigency before imposing a victim penalty assessment (VPA) and by ordering interest on its restitution award. We remand for the superior court to strike the VPA and reconsider the imposition of interest on restitution in light of Mitchell's indigency and other factors under RCW 10.82.090(2). Otherwise, we affirm.

## I.    BACKGROUND

In November 2003, Seattle police responded to reports of multiple gunshots fired, where reportedly no bullet hit any of the three victims.  Ultimately, in October 2004, a jury found Mitchell guilty of three counts of assault in the first degree and one count of unlawful possession of a firearm in the second degree.  All three assault counts included a firearm enhancement.

In December 2004, the court sentenced Mitchell to a total of 360 months in prison.  The period of incarceration included 60 months for each of the three assault counts, with an additional 60 months for each of the three firearm enhancements.  The sentences on the assault convictions were well below the standard range mandated by RCW 9.94A.510.  Additionally, the court ordered Mitchell to serve each of the assault convictions consecutively, while the unlawful possession conviction (of 51 months, which was a low-end sentence) would be served concurrently with the third assault conviction.  That decision to run the possession conviction concurrently also constituted an exceptional sentence.  See RCW 9.94A.589(1)(c) ("offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed").  Finally, the court also imposed legal financial obligations in the form of a VPA and restitution.

Mitchell appealed his sentence the same month, which a panel of this court affirmed.  State v. Mitchell, noted at 135 Wn. App. 1036 (2006).  In August 2007, upon direction of our Supreme Court, this court remanded this matter to the trial court to consider the Supreme Court's recent holding in In re Personal Restraint of

<u>Mulholland</u>, 161 Wn.2d 322, 166 P.3d 677 (2007).[1]  <u>State v. Mitchell</u>, noted at 143 Wn. App. 1013 (2008).

In May 2008, the superior court resentenced Mitchell.  The State's resentencing memo included a declaration claiming a victim advocate had learned that a dentist had found a bullet fragment in the jaw of Shauna Malone, one of the complaining witnesses ("declaration").  Further, the State claimed it had been unable to contact Malone either by mail or telephone.  At the resentencing hearing, Mitchell's counsel explained that

> I do have a concern in terms of -- I mean I'm -- I'm not -- I'm not suggesting that the evidence -- the rules of evidence apply and precludes everything without any opportunity to talk with the young woman who apparently had a fragment removed as reported by the – by the state in its declaration, I – *I have some concerns about the – the Court relying on that representation* in terms of – of the sentence.

(Emphasis added).  Even so, the court decided to order the exact same sentence as that imposed in December 2004.

Typically, an appeal must be filed within 30 days after the superior court entered its decision.   RAP 5.2(a).  However, this court can "only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal" either on its own initiative or with a party's motion.  RAP 18.8(a)-(b).  In January 2023, this court granted Mitchell's motion to extend time to file an appeal pursuant to the above authorities.  Mitchell had argued that his trial counsel had "failed to comply with my repeated request

---

[1] In short, <u>Mulholland</u> held that in certain cases, a sentencing court has discretion to order concurrent, as opposed to consecutive, sentences for serious violent offenses.  <u>Mulholland</u>, 161 Wn.2d at 330-31.

that he file a notice of appeal following the resentencing."

## II. ANALYSIS

### A. RCW 9.94A.530(2) and the Real Facts Doctrine

Mitchell argues the resentencing court violated the real facts doctrine by improperly relying on the State's declaration. While it was improper for the court to rely on the declaration, we determine that the court's error was harmless.

#### 1. The Law

The real facts doctrine is based on Washington's Sentencing Reform Act (SRA), specifically RCW 9.94A.530(2). State v. Morreira, 107 Wn. App. 450, 458, 27 P.3d 639 (2001); see also LAWS OF 2001, ch. 10 § 6.[2] The SRA states that

> [i]n determining any sentence other than a sentence above the standard range, *the trial court may rely on no more information than* is admitted by the plea agreement, or *admitted, acknowledged, or proved in a trial or at the time of sentencing*, or proven pursuant to RCW 9.94A.537.[3] Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point.

RCW 9.94A.530(2) (emphasis added). Our Supreme Court has held, "the statute clearly demonstrates that a sentencing court may rely on information produced by something less than the usual adversarial process." State v. Handley, 115 Wn.2d 275, 281, 796 P.2d 1266 (1990) (interpreting the unchanged portions of the prior version of the statute). And "'a sentencing judge is not limited to consideration of facts that would be admissible at trial.'" Id. (quoting State v. Herzog, 112 Wn.2d

---

[2]  RCW 9.94A.370 was recodified as 9.94A.530 pursuant to this legislation.
[3]  RCW 9.94A.537 concerns "Aggravating circumstances—Sentences above standard range." This provision is irrelevant as Mitchell received an exceptional sentence below the standard range in both 2004 and 2008.

419, 430, 771 P.2d 739 (1989)). "Rather, [t]he SRA structures the sentencing decision to consider only the actual crime of which the defendant has been convicted, his or her criminal history, and the *circumstances surrounding the crime*." State v. Brown, 193 Wn.2d 280, 290 n.4, 440 P.3d 962 (2019) (quoting State v. Houf, 120 Wn.2d 327, 333, 841 P.2d 42 (1992) (alteration in original).

However, "[t]o some extent, the [SRA] has limited the trial court's sentencing discretion, including by "protect[ing]" the defendant from the court's "consideration of unreliable or inaccurate information" through the requirement to grant an evidentiary hearing when material facts are in dispute. Handley, 115 Wn.2d at 281-82. "This procedure safeguards the defendant's right to know and object to adverse facts." Id. at 282. In this way "[t]he purpose of this limitation is 'to protect against the possibility that a defendant's due process rights will be infringed upon by the sentencing judge's reliance on false information.'" State v. Hunley, 175 Wn.2d 901, 909, 287 P.3d 584 (2012) (quoting Herzog, 112 Wn.2d at 431-32).

That is, a defendant is entitled to due process at sentencing. Herzog, 112 Wn.2d at 426. And due process requires both that "a defendant in a sentencing hearing be given an opportunity to refute the evidence presented and that the evidence be reliable." State v. Strauss, 119 Wn.2d 401, 418-19, 832 P.2d 78 (1992). It is the latter issue of reliability that raises the constitutional concerns here, which we review de novo. State v. Elmore, 154 Wn. App. 885, 904-05, 228 P.3d 760 (2010) ("A sentencing court's statutory authority under the SRA is a question of law, which we review de novo."); State v. Mullen, 171 Wn.2d 881, 893, 259 P.3d 158 ("We review alleged due process violations de novo.").

2. <u>Discussion: was the use of the declaration error and was it harmless?</u>

The State's declaration stated that

[a]pproximately one week after the original sentencing, Ms. Malone had contact with Vickie Hogan, who at that time was one of the victim advocates from the King County Prosecutor's office assigned to gather information from the victims in support of any requested restitution. Ms. Hogan learned that Ms. Malone had gone to see her dentist because of continuing facial pain. The dentist discovered that Ms. Malone had a bullet fragment lodged in her face, which he removed.

The State argued that "Shauna Malone [], who we believed was stuck by glass fragments when one of the bullets fired by Mr. Mitchell went through the windshield of her car . . . actually had been struck by a bullet fragment." Given the absence of a plea and the timing of this revelation, there is no dispute that this fact was neither "admitted by the plea agreement" nor "admitted, acknowledged, or proved *in a trial*." RCW 9.94A.530(2) (emphasis added).[4] Thus, the question is whether this "circumstance[] surrounding the crime" was proven "at the time of sentencing," i.e., it was reliable. <u>Houf</u>, 120 Wn.2d at 332-33; RCW 9.94A.530(2); <u>Strauss</u>, 119 Wn.2d at 418-19.

On appeal, Mitchell accurately avers that the declaration is "based on multiple layers of hearsay, <u>i.e.</u>, the dentist to Ms. Malone, Ms. Malone to the victim

---

[4] The State argues that Mitchell's failure to raise a "formal objection" at resentencing amounted to him "acknowledge[ing]" the contents of the State's declaration, relying on the former version of .530(2) then codified as RCW 9.94A.370(2), <u>State v. Mail</u>, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993) and <u>State v. Grayson</u>, 154 Wn.2d 333, 339, 342, 111 P.3d 1183 (2005). However, as will be discussed below, we hold that Mitchell's counsel did "timely and specific[ally]" object or dispute the matter, in a way that went to the "veracity of the facts." <u>Mail</u>, 121 Wn.2d at 712. As such, we need not consider this argument further for purposes of this assignment of error.

advocate, and the victims advocate to the prosecutor." Furthermore, there is no indication in the record that any person in that chain of information was either available to be cross examined or still in the control of the State. The dentist was unnamed, the State no longer employed the victims advocate, and the State conceded it had been unable to contact the victim by any means for several years. Indeed, approximately three years had passed between the discovery of these facts and the resentencing.

Washington's evidentiary rules expressly do not apply to sentencing proceedings. ER 1101(c)(3). And "the judge may consider hearsay affidavits 'even though obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine.'" Herzog, 112 Wn.2d at 430 (quoting Williams v. People of the State of New York, 337 U.S. 241, 245, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)).

Even so, due process requires "some minimal indicium of reliability *beyond mere allegation*." State v. Ford, 137 Wn.2d 472, 481, 973 P.2d 452 (1999) (alteration in original) superseded by statute on other grounds as stated in State v. Cobos, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014). As such, "[t]he State does not meet its burden through bare assertions, unsupported by evidence." Id. at 482 (adding "[n]or does failure to object to such assertions relieve the State of its evidentiary obligations.") (emphasis added); see also State v. Jones, 182 Wn.2d 1, 6, 338 P.3d 278 (2014) (even an unpreserved error can still be asserted on appeal if "the sentence is based on information that is false, lacks a minimum indici[um] of reliability, or is unsupported in the record.").

7

The State, both at resentencing and on this appeal, failed to cite to any "supporting evidence" on Malone's condition beyond its own fourth-hand declaration, whether in the trial record, in the original sentencing record or since.[5] We hold that the judge erred by relying on this declaration because, on these facts, it was not reliable as it was entirely uncorroborated, unsupported by the record, and thus had significant potential of being false. Hunley, 175 Wn.2d at 909.

Nonetheless, the State argues in the alternative that any error was harmless, even if the court improperly considered the new evidence. "The State has the burden of proving the error was harmless beyond a reasonable doubt." State v. Miller, 184 Wn. App. 637, 647, 338 P.3d 873 (2014). "Harmless-error review for a constitutional sentencing error turns on whether the error 'was harmless beyond a reasonable doubt in that it did not contribute to the [sentence] obtained.'" State v. Harris, 27 Wn. App. 2d 522, 537, 533 P.3d 135 (2023) (quoting Sochor v. Florida, 504 U.S. 527, 539, 112 S. Ct. 2114, 119 L. Ed. 2d 326 (1992)) (alteration in original) (internal quotation marks omitted).

"'[M]ost constitutional errors can be harmless'" and "[o]nly those errors that are 'structural' require automatic reversal." State v. Zimmerman, 130 Wn. App. 170, 176, 121 P.3d 1216 (2005) (quoting Neder v. U.S., 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). However, "[s]tructural errors are of a very limited

---

[5] Instead, the State attempts to distinguish Ford, Jones, and other cases as "only relevant in the context of establishing a defendant's criminal history." While those cases may have been considering the dearth of evidence in challenges to a defendant's offender score, nothing undermines the general principal that "due process rights will be infringed upon by the sentencing judge's reliance on false information." Hunley, 175 Wn.2d at 909 (also considering evidence in scoring case).

class, 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'"[6] Id.

As for structural errors at sentencing, Washington courts have determined that "[i]f a court imposes a sentence that is not authorized by the jury's verdict, harmless error analysis does not apply." State v. Clark-El, 196 Wn. App. 614, 625, 384 P.3d 627 (2016) (citing State v. Williams-Walker 167 Wn.2d, 889, 900-01, 225 P.3d 913 (2010)). Specifically, Williams-Walker was considering whether a sentencing enhancement, and thus sentence above the standard range, was erroneously ordered under Blakely v. Wash., 542 U.S. 296, 318, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). However, this appeal involves sentences below the standard statutory range, meaning the error is not structural under the above precedent.

In Mitchell's case, the State's declaration did not affect the resentencing court's decision. The court stated that it was "taking into consideration the information regarding Ms. Malone." And, the court tersely found the declaration was "reliable simply because of the way in which it was presented and the nature of the information." However, the court very clearly stated that "the additional information about Ms. Malone's injury *does not change this Court's finding that* – to impose the standard range sentence [as the State requested] on each of these counts would result in an excessive sentence, and that to go below the standard range does operate to insure [] proportionality." (Emphasis added). Further, the

---

[6] "Such errors include the total denial of counsel, a biased trial judge, racial discrimination in jury selection, denial of self-representation at trial, and denial of a public trial." Zimmerman, 130 Wn. App. at 176.

court stated that "in the original sentencing materials . . . we knew that a bullet had gone through the car at any rate and it shattered the glass. And so I'm not sure that there's a substantial difference between those two things, but there is some – that fact is of some consequence, albeit not overwhelming."

The court then granted Mitchell's alternative sentencing request and expressly imposed the same sentence as that imposed in 2004. This decision included a refusal to run the sentences on the assault convictions consecutively as again Mitchell requested, explaining that, had it done that, "Mitchell would be punished essentially for one act; one victim, when there are in fact three . . . And to sentence him to what amounts to a punishment for one of those acts is simply not appropriate and commensurate[.]"

The court considered the State's declaration but expressly stated it did not alter its sentencing decision in any way. Instead, its original rationale–that Mitchell's punishment needed to be commensurate with the affect he had on all three victims and nothing more—was unchanged.

Moreover, we agree with the State that this matter is similar to State v. Gutierrez, 58 Wn. App. 70, 791 P.2d 275 (1990), abrogated on other grounds by State v. Ritchie, 126 Wn.2d 388, 894 P.2d 1308 (1995). There, this court considered whether a psychological report was erroneously used at sentencing. Id. at 77. While it was determined there was no error, this court noted that any error would have been harmless as "the [sentencing] court indicated it placed very little, if any, emphasis on the report of Dr. Weiss and indicated it relied heavily" on other information. Id.

For the reasons above, we hold that the resentencing court's error to rely on a flawed declaration was harmless beyond a reasonable doubt, as the improperly considered declaration clearly did not affect the court's resentencing decision.

### 3. Ineffective Assistance of Counsel

Mitchell argues, in the alternative, if we hold that "the trial court did not err in considering the prosecutor's hearsay-laden declaration because Mitchell's counsel failed to properly object, then he was deprived of his right to effective assistance of counsel." More specifically, he claims that, if this court holds his counsel "failed to properly object," specifically, "his attorney's performance was deficient for failing to 'research the relevant law' and recognizing that the use of the declaration violated the statute." Id. at 14 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).[7]

We need not reach the merits of this argument because we hold that Mitchell's counsel sufficiently objected when he explained his evidentiary "concerns" with the new declaration.

"In order to challenge the information, the objection must be both timely and specific." State v. Mail, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). The objection was timely as it was immediately after the State's remarks. The objection was sufficiently specific as well because the objection and its context appraised the

---

[7] In his reply, Mitchell argues that, if he did not properly object, his counsel was ineffective because there was "no strategic advantage" in not requesting an evidentiary hearing. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

11

court of the alleged evidentiary issues. Namely, Mitchell's counsel advised the court he did not have "any opportunity to talk with [the victim]" and had "some concerns about the . . . Court relying on th[e] representation [in the declaration] in terms of – of the sentence." In other words, Mitchell's counsel specifically averred that Malone's absence undermined his ability to, inter alia, verify the information and thus argued the declaration may not be reliable, which is ultimately the statutory and constitutional issue in question. His complaints about his counsel's failure to cite controlling law is otherwise too conclusory to warrant judicial attention. State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

B.      Legal Financial Obligations

The resentencing court ordered Mitchell pay both a $500 VPA and $2,909.01 in restitution. As stated in Mitchell's 2008 judgment and sentence, "[f]inancial obligations shall bear interest pursuant to RCW 10.82.090[.]"

In February 2023, Mitchell submitted an affidavit of indigency, noting that "my assets and liabilities were previously considered by the court when it assigned me appointed counsel at public expense. There has been no change in my financial status[.]" The same month, the superior court issued an order of indigency.

For the reasons below, we determine that a remand is necessary to strike the VPA and for the superior court to reconsider restitution in light of Mitchell's indigency.

1. Restitution and Interest

12

On appeal, Mitchell asks this court to remand for the superior court to reconsider imposing interest on restitution under RCW 10.82.090(2).

In 2022, the legislature added subsection (2) to RCW 10.82.090, which states that the superior court "may elect not to impose interest on any restitution the court orders."  RCW 10.82.090(2); LAWS OF 2022, ch. 260, § 12.  However, "[b]efore determining not to impose interest on restitution, the court *shall* inquire into and consider the following factors" including "whether the offender is indigent[.]"  Id. (emphasis added).

This court recently addressed this issue in State v. Reed, ___ Wn. App. 2d ___, 538 P.3d 946 (2023), which is analogous to Mitchell's situation.  Both cases were appeals of a resentencing order for assault in the first degree.  Reed, 538 P.3d at 946.  Both cases sought a remand for the superior court to consider waiving interest on restitution in light of the amendments to RCW 10.82.090.  Reed, 538 P.3d at 947.  Both cases' appellants argued that RCW 10.82.090(2), enacted after their resentencing, nonetheless applied to them as their cases were on direct appeal.  Reed, 538 P.3d at 947.  Finally, the State argued in both cases that interest on restitution is not analogous to "costs" as contemplated in State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018).  Reed, 538 P.3d at 947.

Reed held that "[l]ike the costs imposed in Ramirez, restitution interest is a financial obligation imposed on a criminal defendant as a result of conviction."  Reed, 538 P.3d at 947 (citing RCW 10.01.160(1); RCW 10.82.090(1)).  As such, the panel determined "that restitution interest is analogous to costs for purposes of applying the rule that new statutory mandates apply in cases, like this one, that

13

are on direct appeal." Id. (citing State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023)). Accordingly, the Reed panel remanded the matter for reconsideration under RCW 10.82.090(2).

Pursuant to Reed, we remand for the superior court to reconsider the imposition of interest on restitution in light of the relevant factors under RCW 10.82.090(2) and Mitchell's indigency.

2. Victim Penalty Assessment

Mitchell also challenges the resentencing court's assessment of a VPA. Formerly, RCW 7.68.035(1)(a) mandated a $500 VPA for all adults found guilty in superior court of a crime. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163. In 2023, our legislature amended .035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are statutorily required to waive VPAs, even those imposed prior to the 2023 amendments, on the defendant's motion. Id.; RCW 7.68.035(5)(b).

On appeal, the State does not object to a remand to strike the VPA. Accordingly, we remand this matter to the superior court to strike the VPA in accordance with RCW 7.68.035(4).

### III.    CONCLUSION

For the reasons above, we remand for the superior court to strike the VPA and reconsider the imposition of interest on Mitchell's restitution obligations in light of his indigency and other factors under RCW 10.82.090(2).  Otherwise, we affirm.

_Díaz, J._

WE CONCUR:

_Hazel, ACJ_    _Dwyer, J._