IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30336-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARRELL McCARTER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Darrell McCarter appeals his conviction for felony DUI[1] and first degree DWLS[2] on double jeopardy grounds. He was initially cited for DUI and DWLS and ordered to appear in Grant County District Court, but the State later dismissed the district court charges in order to pursue a felony conviction. In dismissing the initial charges, the district court assessed $250 in fees for the preparation and service of warrants for earlier failures of Mr. McCarter to appear.

Mr. McCarter now argues that the district court assessment and his payments toward it constitute a "punishment" that was multiplied, unconstitutionally, by the

_____

[1] Driving under the influence, RCW 46.61.502(6).

[2] Driving while license suspended or revoked in the first degree, RCW 46.20.342(1)(a).

convictions he appeals. The warrant fees were imposed for the nonpunitive purpose of recouping costs, however, and did not constitute punishment. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In April 2010, Darrell McCarter was stopped by police for suspicion of DUI, and provided two breath samples that revealed a blood alcohol content of .132 and .131, respectively. He was issued two citations: the first, C0750435, for DUI and DWLS; and the second, C0750436, for operating his vehicle without a required ignition interlock in violation of RCW 46.20.740. Both citations required him to appear in district court for a mandatory appearance the following day.

He failed to appear and a bench warrant was issued for his arrest. He belatedly appeared for arraignment in October 2010 at which point the warrant was quashed, he was determined to be indigent, and counsel was appointed to represent him. He nonetheless failed to appear for his next court appearance in December, so a second bench warrant was issued. He was arrested on the warrant in February 2011.

Following his arrest, it came to the attention of the State that Mr. McCarter had been convicted of four prior DUI offenses during the prior 10 years. Upon realizing that his criminal history supported a charge of felony DUI, the State moved to dismiss the charges pending in district court without prejudice so that it could bring charges in superior court. The district court granted the motion for voluntary dismissal in March 2011 stating, with respect to the two district court matters:

2

[O]n C750435 and 6, those are both dismissed without prejudice, the State's motion to pursue the felony DUI. There is a $250.00 warrant fee on the DUI matter on 435, and there are $271.00 warrant fees on the ignition interlock violation.

Report of Proceedings (District Court, Mar. 16, 2011) (RPDC) at 4. The State then filed the charges of felony DUI and DWLS that are at issue in this appeal.

A couple of months later, Mr. McCarter made two $25 payments toward the warrant costs assessed in district court in case C0750435.[3] He then moved to dismiss the charges against him in superior court on the basis that the successive prosecutions in district and superior court violated principles of double jeopardy. Among other arguments, he pointed out that the $250 assessment—evidently reflecting a $125 fee for preparation and service of each of two warrants—exceeded the $100 maximum provided by RCW 10.01.160(2).[4]

The superior court denied Mr. McCarter's motion, ruling that the district court matter was dismissed before McCarter was placed in jeopardy, the warrant fee was administrative, and the fee was not "punishment" within the meaning of the double jeopardy clause. Report of Proceedings (Superior Court, Jun. 27, 2011) (RPSC) at 82. It

---

[3] Mr. McCarter was not convicted of an ignition interlock violation in superior court, so the $271 in warrant fees imposed in connection with that charge in the district court have no relevance to this appeal.

[4] RCW 10.01.160(2) provides that "[c]osts for preparing and serving a warrant for failure to appear may not exceed one hundred dollars."

3

observed that to the extent that the district court exceeded its authority in imposing fees higher than the statutory maximum, Mr. McCarter's remedy lay in district court.

Mr. McCarter proceeded to trial in superior court and was convicted of felony DUI and DWLS in the first degree. He appeals.

ANALYSIS

Mr. McCarter makes two assignments of error: first, that the State's pursuit of prosecution in district and then superior court violated the constitutional prohibition against double jeopardy contained in the United States and Washington Constitutions; and second, that the district court's order imposing a fine against Mr. McCarter violated article I, section 22 of the Washington Constitution. Br. of Appellant at 1.

Mr. McCarter may not obtain review in this court of the second asserted error. As was pointed out to him in proceedings in the superior court on June 27, 2011, his recourse for any error made by the district court in imposing warrant fees on March 16, 2011 would be from the district court in the first instance, with a right of appeal as provided by RALJ 2.2. RPSC at 81, 83. He took no action in district court to challenge the warrant fees. He cannot appeal them here. To the extent his arguments based on article I, section 22 of the Washington Constitution relate to his claim of double jeopardy, we consider them below.

Mr. McCarter argues that the district court's assessment of $250 was a fine, constituted punishment, and barred the State from punishing him a second time on double jeopardy grounds. Whether his judgment and sentence for felony DUI and DWLS

4

violated double jeopardy is a question of law reviewed de novo. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

The Fifth Amendment to the federal constitution and article I, section 9 of our state constitution provide a prohibition against double jeopardy that protects a defendant from multiple punishments for the same offense. *Harris v. Charles*, 171 Wn.2d 455, 467, 256 P.3d 328 (2011) (citing *State v. McClendon*, 131 Wn.2d 853, 862, 935 P.2d 1334 (1997)). Mr. McCarter's appeal "rises and falls on a single question: is the [State] action punishment? If it is punishment, jeopardy attaches." *McClendon*, 131 Wn.2d at 870 (Talmadge, J., concurring).

Whether a law imposes punishment is determined by a two-part test. *In re Pers. Restraint of Forbis*, 150 Wn.2d 91, 100, 74 P.3d 1189 (2003). The first test asks whether the action carried with it the express or implied intent of the government to sanction. *State v. Catlett*, 133 Wn.2d 355, 365-66, 945 P.2d 700 (1997). If the intent of the action is not punitive, then the analysis turns to whether the sanction's purpose or effect nevertheless is so punitive as to negate that nonpunitive intent. *Id.* at 367.

Even when a government action has a deterrent effect, it does not automatically render the action punitive. *Harris*, 171 Wn.2d at 470. An action is not punitive simply because the defendant sees it as so; rather, a defendant must present clear proof that a sanction not labeled as punitive is nonetheless so punitive as to violate the prohibition against multiple penalties and therefore subject the defendant to double jeopardy. *Id.*

5

In *State v. Brewster*, the court employed this two-part test to determine whether a defendant's responsibility for a statutory DNA (deoxyribonucleic acid) fee constituted punishment—not for double jeopardy purposes but to determine whether the fee should be imposed on the basis of the law existing at the time of her offense, or the law existing at the time of sentencing. 152 Wn. App. 856, 859, 218 P.3d 249 (2009). Despite this different context for applying the test, the decision in *Brewster* is instructive. It applies the same two-part test that we are called upon to apply, and it applies it to a collection fee.

The court in *Brewster* first looked to the legislature's purpose in adopting the DNA collection fee. *Id.* at 860 (citing *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994)). The court found that the fee "serves to fund the collection of samples and the maintenance and operation of DNA databases" that the legislature had found to be important tools in criminal investigations and in identifying missing persons and unidentified human remains. *Id.* (citing LAWS OF 2002, ch. 289, § 1; LAWS OF 2008, ch. 97, § 1). Inasmuch as these are not punitive purposes, the fee was not punitive under the first prong of the test. *Id.*

Next, the court examined whether the actual effect of the statute was so punitive as to negate the legislature's regulatory intent. *Id.* (quoting *Ward*, 123 Wn.2d at 499). In determining its effect, the court considered the following factors:

6

> "'Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'"

*Id.* (quoting *Ward*, 123 Wn.2d at 499 (quoting *Kennedy v. Medonza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963))).

The court found that the DNA fee was a legal financial obligation whose purpose was monetary, rather than retributive or to serve as a deterrent. *Id.* at 861. Such monetary obligations have historically not been regarded as punishment. *Id.*; *see also State v. Blank*, 80 Wn. App. 638, 641, 910 P.2d 545 (1996) (statute imposing costs of appeal, including monies expended on behalf of indigent defendants, on convicted juvenile or adults, not punitive), *aff'd*, 131 Wn.2d 230, 930 P.2d 1213 (1997). Applying the factors listed in *Kennedy*, the court concluded that the DNA fee was not punitive under the second prong of the test.

Like reasoning applies here. Courts are authorized to impose the cost of preparing and serving a bench warrant for a defendant's failure to appear. RCW 10.01.160(1). The language of the statute does not indicate that discretion is granted to impose costs for a punitive purpose and the legislative history of RCW 10.01.160 confirms the absence of punitive intent. Comments on the provision reflect that the drafters intended the imposing

7

of fees to alleviate burdens imposed on taxpayers. S.B. REP. on S.B. 6065, 53rd Leg.,

Reg. Sess. (Wash. 1994). A purpose of allowing the government to recoup its costs is not

a punitive purpose. "A sanction is remedial if it serves to make the government whole for

the damages and injury caused to it by the person being sanctioned." *In re Pers. Restraint

of Metcalf,* 92 Wn. App. 165, 179, 963 P.2d 911 (1998) (citing *Helvering v. Mitchell,* 303

U.S. 391, 401, 58 S. Ct. 630, 82 L. Ed. 917 (1938)).

Mr. McCarter nonetheless argues that the $250 charge was sometimes labeled a

fine in the court record—evidence that it was punitive.[5] A "fine" is commonly understood

to mean "'[a] sum required to be paid as punishment or penalty for an offense.'" *State v.

Jackson,* 65 Wn. App. 856, 860, 829 P.2d 1136 (1992) (alteration in original) (quoting

WEBSTER'S NEW WORLD DICTIONARY 523 (2d college ed. 1976)). The trial court referred

to the cost as a "fee," however, and the court minutes recorded the liability as a "WAR"

(warrant) liability. RPDC at 4; Clerk's Papers at 104. The authorizing statute refers to it

as a "cost." RCW 10.01.160(2). Mr. McCarter's identification of two references to a fine

does not satisfy his burden of presenting "clear proof" that the assessment was punitive,

particularly where the legislature and the judge describe the liability in nonpunitive terms

and Mr. McCarter must rely on anonymous clerical references.

---

[5] Mr. McCarter points to the court's minute sheet, which indicates a fine of $250, Clerk's Papers (CP) at 104, and to the district court docket entry, which states "DEF TO PAY $250.00 FINE IN FULL BY 12-16-11." CP at 113.

8

Mr. McCarter also relies on his contention that the warrant fee was constitutionally and statutorily impermissible as a basis for finding it to be punitive.[6] He relies upon the language of article I, section 22 of the Washington Constitution that

> [i]n no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed.

He further argues that costs under RCW 10.01.160 may be imposed, statutorily and constitutionally, only on defendants who are convicted, citing *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974); *State v. Barklind*, 87 Wn.2d 814, 557 P.2d 314 (1976); and *Utter v. Department of Social and Health Services*, 140 Wn. App. 293, 165 P.3d 399 (2007) as authority.

His arguments are not well taken. As originally enacted, RCW 10.01.160, allowing courts to impose court costs on defendants, provided that only "convicted" defendants would be responsible for costs. *State v. Smits*, 152 Wn. App. 514, 519, 216 P.3d 1097 (2009). The statute was amended in 1994 to extend responsibility for several types of costs to all defendants, whether or not convicted. *See* LAWS OF 1994, ch. 192, § 1. The present statute provides that a nonconvicted defendant may be responsible for costs such as "defendant's entry into a deferred prosecution program, costs imposed upon a defendant for pretrial supervision, or costs imposed upon a defendant for preparing and

---

[6] As noted above, Mr. McCarter did not pursue a direct challenge to the district court's imposition of the warrant fees, which is therefore not before us.

serving a warrant for failure to appear." RCW 10.01.160(1). RCW 10.01.160(2) further

provides that

> [e]xpenses incurred for serving of warrants for failure to appear and jury fees under RCW 10.46.190 may be included in costs the court may require a defendant to pay. . . . Costs imposed constitute a judgment against a defendant and survive a dismissal of the underlying action against the defendant.

Only if the defendant is acquitted does the statute provide that such costs shall be

vacated. *Id.*

The principal concerns of *Fuller*, on which Mr. McCarter relies, were whether a

state requirement that a convicted defendant repay the costs of effective representation of

counsel deprived the defendant of exemptions from execution afforded other judgment

creditors and whether the requirement infringed upon an indigent defendant's

constitutional right to appointed counsel. In discussing the petitioner's challenges to the

Oregon statute, the Court observed that any obligation to repay defense costs imposed

pursuant to the Oregon statute was "'never mandatory,'" "[r]ather, several conditions

must be satisfied," and that one of the conditions was that the defendant was convicted.

417 U.S. at 44 (quoting *State v. Fuller*, 12 Or. App. 152, 156, 504 P.2d 1393 (1973)).

*Fuller* does not hold that the United States Constitution limits a state's right to

recoup defense costs to *convicted* defendants. Indeed, the Court was required to address

the petitioner's opposite contention: that the Oregon statute denied equal protection of the

laws unless all defendants, convicted or not, were required to repay. *Id.* at 48-49. In

response, the high court held that Oregon's decision not to require repayment by nonconvicted defendants was "noninvidious," as "Oregon could surely decide with objective rationality that when a defendant has been forced to submit to a criminal prosecution that does not end in conviction, he will be freed of any potential liability to reimburse the State." *Id.* at 49-50. In other words, a state may reasonably decide to impose costs only on convicted defendants. *Fuller* does not suggest that any such limitation is constitutionally required. To the extent *Barklind* or *Utter* state or imply that *Fuller* holds that costs may be recouped only from convicted defendants, they are mistaken.

*Barklind*'s and *Utter*'s discussions of the requirements of RCW 10.01.160 are irrelevant to the statute's application to Mr. McCarter. *Barklind* was decided in 1976, before the legislature amended the statute to distinguish the categories of costs that may be imposed whether or not a defendant is convicted. And *Utter* does not address warrant costs; it addresses costs "'specially incurred by the state in prosecuting the defendant.'" 140 Wn. App. at 302-03 (quoting RCW 10.01.160(2)). Warrant costs are separate from prosecuting costs. *See* RCW 10.01.160(2).

Finally, article I, section 22 of the constitution does not apply because the district court's imposition of $250 in warrant fees did not compel Mr. McCarter to advance money or fees in order to secure his rights as a defendant under the Washington Constitution.

11

To summarize, none of Mr. McCarter's arguments in support of the punitive intent required to establish "punishment" under the first prong of the two-part test have merit.

Turning to the second prong—whether the effect of imposing a cost is so punitive as to overcome the legislature's nonpunitive intent—the factors articulated in *Kennedy* all indicate otherwise. The warrant costs imposed do not define or punish criminal behavior and do not require a finding of scienter. The imposition does not involve an affirmative disability or restraint.[7] The amount of the fee varies only in relation to the frequency of the offense, not the gravity, and the charge is not excessive in relation to its purpose.

Mr. McCarter nonetheless relies upon the fact that the district court imposed costs of $125 per warrant served, thereby exceeding the $100 statutory maximum. The State could have simplified this issue by conceding that the district court made an error.[8] Even absent the State's concession of error, however, the trial court's imposition of fees $25 higher, per warrant, than is statutorily authorized is not an actual effect of the authorizing statute so punitive as to negate the legislature's regulatory intent. Mr. McCarter has not demonstrated that the statute is the source of the $50 (total) error at all. He has shown

---

[7] As a fundamental rule, a defendant may not be incarcerated solely because of an inability to pay court ordered costs. *Smits*, 152 Wn. App. at 522 (citing *State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992)). Incarceration would result only if failure to pay was willful. *Curry*, 118 Wn.2d at 918.

[8] Instead, the State says only that there "may" have been an overcharge and that the district court record "is not illuminative as to why McCarter's warrant costs totaled $250." Br. of Resp't at 6.

only that the trial court made a mistake: a mistake that he would rather seize upon as a basis for a double jeopardy argument than have corrected. The showing of punitive effect required for the second prong is not satisfied.

In conclusion, there is no showing that the warrant fees imposed in district court were punitive by intent or in their effect. Because they do not constitute punishment, double jeopardy principles do not apply.

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____          _____
Korsmo, C.J.                                              Brown, J.