**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84430-0-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| MARC RICHARD VANSLYKE, | |
| Appellant. | |

FELDMAN, J. — Marc Richard Vanslyke appeals the no-contact condition of his judgment and sentence and the no-contact order (NCO) issued in connection therewith. Vanslyke claims that the trial court was required to reduce the duration of the no-contact condition and NCO by the amount of time that he was subject to a prior no-contact condition and NCO for the same offense and that his trial attorney was ineffective by failing to properly argue this issue below. Finding no statutory or constitutional error, we affirm.

I

On January 18, 2018, the Lynwood Municipal Court issued an order prohibiting Vanslyke from contacting Jolene Washington until January 18, 2024. On May 8, 2020, police officers responding to a 911 hang-up call from Washington's apartment found her in the apartment and Vanslyke on the neighbor's balcony. The State charged Vanslyke with (1) felony violation of a court

No. 84430-0-I/2

order – domestic violence[1] and (2) gross misdemeanor interfering with domestic violence reporting.

Vanslyke pleaded guilty to both counts. On May 11, 2021, the trial court sentenced Vanslyke to 60 months of incarceration on the class C felony count and imposed 364 days of confinement on the gross misdemeanor count but suspended that sentence. As a condition of the sentence, the court ordered Vanslyke not to contact Washington. It also issued a separate post-conviction NCO that expired five years from the date of sentencing.

On January 31, 2022, this court held that Vanslyke's plea was constitutionally invalid because the charging language failed to apprise him of an essential element of a willful violation of a court order. *State v. Vanslyke*, No. 82651-4-I, slip op. at 1 (Wash. Ct. App. Jan. 31, 2022) (unpublished), http://www.courts.wa.gov/opinions/pdf/826514.pdf (citing *State v. Briggs*, 18 Wn. App. 2d 544, 550, 553, 492 P.3d 218 (2021)). This court remanded the matter to the trial court to allow Vanslyke to withdraw his guilty pleas, which he did. *Id*.

Following a jury trial, Vanslyke was found guilty of the felony count but not guilty of the gross misdemeanor count. At the resentencing hearing on August 9, 2022, the trial court again sentenced Vanslyke to 60 months of incarceration and, as a condition of the sentence, prohibited him from contacting Washington until August 9, 2027. The court also issued a separate post-conviction NCO that likewise expired "5 years from today's date." Vanslyke appeals.

---

[1] The statute under which Vanslyke was charged, RCW 26.50.110, has since been repealed. LAWS OF 2021, ch. 215, § 170 (eff. July 1, 2022).

2

No. 84430-0-I/3

II

A.      *Statutory Interpretation*

Vanslyke argues that the duration of the no-contact sentencing condition and NCO imposed at his resentencing hearing exceed the maximum length permitted by RCW 10.99.050 because the trial court failed to credit him with the time he was subject to the no-contact sentencing condition and NCO imposed at his initial sentencing hearing. We disagree.

We review a trial court's sentence with deference and will only reverse a sentence based on a "clear abuse of discretion or misapplication of the law." *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440 (1990). Here, Vanslyke's sentencing arguments require us to interpret RCW 10.99.050. "The goal of statutory interpretation is to discern and implement the legislature's intent." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "If the legislature's intent is clear based on the plain language of the statute, 'then the court must give effect to that plain meaning as an expression of legislative intent.'" *State v. Granath*, 190 Wn.2d 548, 552, 415 P.3d 1179 (2018) (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002)). Statutory interpretation is a legal issue, which we review de novo. *State v. Landsiedel*, 165 Wn. App. 886, 889, 269 P.3d 347 (2012).

The plain language of RCW 10.99.050 resolves the issue presented here. It unambiguously states, without qualification, that an NCO issued as a condition of a felony sentence "remains in effect for a fixed period of time determined by the court, which may not exceed the adult maximum sentence established in RCW 9A.20.021." RCW 10.99.050(2)(d). Vanslyke was convicted of a class C felony,

3

No. 84430-0-I/4

which carries a maximum sentence of five years. RCW 9A.20.021(1)(c). Therefore, RCW 10.99.050 authorized the sentencing court to impose an NCO lasting up to five years for Vanslyke's offense. The trial court's NCO issued as a condition of Vanslyke's sentence did not exceed that statutory limit.

Moreover, the legislature knows how to provide defendants with credit for court-imposed restrictions, and it did not do so here. For example, RCW 9.94A.505(6) provides, "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced." Additionally, RCW 9.94A.680(3) states, "For offenders convicted of nonviolent and nonsex offenses, the court may credit time served by the offender before the sentencing in an available county supervised community option . . . ." Had the legislature intended to provide a statutory basis to credit defendants with time they were previously prohibited from contacting a person, it would have used similar language in RCW 10.99.050. It did not, and its use of different language is legally significant. *See Samish Indian Nation v. Dep't of Licensing*, 14 Wn. App. 2d 437, 442, 471 P.3d 261 (2020) ("When the legislature uses different language in the same statute, courts presume the legislature intended a different meaning.").

Despite the clear language of the statute, Vanslyke urges us to apply the rule of lenity to construe RCW 10.99.050 in his favor. But courts may apply the rule of lenity only where a statute is ambiguous such that "it is subject to two or more reasonable interpretations." *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993). RCW 10.99.050 is subject to only one reasonable interpretation: the sentencing court could properly impose an NCO lasting up to five years from the

4

date of sentencing. Vanslyke offers no authority supporting any legislative intent to credit defendants with time they were previously subject to NCOs for the same offense. We therefore assume no such intent exists. *See State v. Loos*, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) ("When a party provides no citation to support an argument, this court will assume that counsel, after diligent search, has found none."). In sum, because the trial court did not prohibit Vanslyke from contacting the victim for longer than the maximum duration prescribed in RCW 10.99.050, it did not abuse its discretion in setting the duration of the sentencing condition or NCO.

B.      *Due Process*

"[T]he 'imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy is a violation of due process of law.'" *State v. Brown*, 193 Wn.2d 280, 288, 440 P.3d 962 (2019) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)) (internal quotation marks omitted). Vanslyke argues that the trial court penalized him for exercising his right to appeal in violation of due process because, by not crediting him with the time he was subject to the initial sentencing condition and NCO during the pendency of his first appeal, the court effectively imposed a longer period of no-contact following his successful appeal. This argument fails because a no-contact restriction is not a "penalty"—nor is it "punitive"—for due process purposes. As a result, due process does not require that Vanslyke receive credit for the time that he was subject to the previous sentencing condition and NCO for the same offense.

5

No. 84430-0-I/6

Our constitutional analysis in *In re Personal Restraint of Arseneau*, 98 Wn. App. 368, 370-71, 989 P.2d 1197 (1999), is controlling here. In *Arseneau*, the Department of Corrections prohibited Arseneau from contacting a family member who was not the victim of the offense for which he was sentenced. The defendant argued the restriction violated the constitutional prohibitions on double jeopardy and ex post facto punishments. *Id.* at 379.[2] In determining whether the government's action was sufficiently "punitive" to warrant constitutional scrutiny, we first considered the relevant legislative purpose. *Id.* We then examined the effect of the governmental action as measured by the following seven factors:

> 1) whether the sanction involves an affirmative disability or restraint; 2) whether it has been historically regarded as punishment; 3) whether it comes into play only on a finding of scienter; 4) whether it furthers retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether an alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears to be excessive in relation to the alternative purpose assigned.

*Id.* at 379-80 (citing *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994) (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963))). We reasoned the prohibition was not "punitive" because, although it imposed an affirmative burden, "no-contact provisions have not traditionally been considered punishment. They are civil in nature and designed to

---

[2] Although *Arseneau* did not involve a due process challenge, we may look to cases discussing other constitutional rights for guidance in determining what constitutes a "penalty" in the due process context. *See State v. Felix*, 125 Wn. App. 575, 578-79, 105 P.3d 427 (2005) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)) (applying the definition of "punishment" for purposes of due process and the right to jury trial to "punishment" for purposes of ex post facto and double jeopardy); *see also In re Pers. Restraint of Forbis*, 150 Wn.2d 91, 100-01, 74 P.3d 1189 (2003) (citing *Hudson v. U.S.*, 522 U.S. 93, 99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997)) (applying the definition of "punitive" for purposes of double jeopardy to "punitive" for purposes of ex post facto).

protect third parties." *Id.* at 380. We also noted that the no-contact prohibition did not depend on a finding of scienter, was intended to regulate conduct instead of punish, and was not exaggerated or excessive. *Id.*

In *State v. Felix*, we affirmed our reasoning in *Arseneau* in the context of whether a post-conviction NCO constitutes "punishment" for purposes of the constitutional right to a jury determination of necessary facts that increase a defendant's potential punishment. 125 Wn. App. 575, 578-79, 105 P.3d 427 (2005) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). In declining to find a constitutional violation, we held that an NCO issued under RCW 10.99.050 is even less punitive than the no-contact prohibition in *Arseneau* because the former "applies only to the actual victim of the crime" and the statute "specifies only additional enforcement measures for no-contact orders that may already be issued as a sentencing condition." *Id.* at 579-80.[3]

Here too, Vanslyke's sentencing condition and NCO are not punitive for due process purposes. The legislative purpose of RCW 10.99.050 is to "protect[] victims of domestic violence" and to do so "for the adult statutory maximum." Laws of 2019, ch. 263, § 301 (eff. July 28, 2019). This legislative purpose shows that

---

[3] Washington courts have reached similar conclusions for other court-imposed restrictions short of confinement. Our Supreme Court has held that certain presentencing release conditions are not punitive such that denying defendants credit time subjects them to double jeopardy. *See State v. Medina*, 180 Wn.2d 282, 293-94, 324 P.3d 682 (2014) (supervised alternative community program); *Harris v. Charles*, 171 Wn.2d 455, 469-73, 256 P.3d 328 (2011) (electronic home monitoring of misdemeanants). The court has also declined to hold that probationers have a constitutional right to credit for nonjail time served on probation. *See In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 597-98, 647 P.2d 1026 (1982). Similarly, the court has reasoned that sanctioning an inmate for not attending mandatory stress and anger management classes was not sufficiently punitive to constitute an ex post facto violation. *See Forbis*, 150 Wn.2d 91 at 100-01. Our court has applied the same logic to a statutory weekly check-in requirement for sex offenders. *See State v. Boyd*, 1 Wn. App. 2d 501, 513, 408 P.3d 362 (2017). We have also held that imposing warrant costs and DNA collection fees is not punitive. *See State v. McCarter*, 173 Wn. App. 912, 918, 295 P.3d 1210 (2013); *State v. Brewster*, 152 Wn. App. 856, 859, 218 P.3d 249 (2009).

No. 84430-0-I/8

the purpose of restricting Vanslyke's conduct in this manner is not to punish him, but to protect Ms. Washington (the victim). The trial court's justification for imposing the NCO at the resentencing hearing was also non-punitive in nature:

> I do agree that the post-conviction no-contact order is appropriate. *It won't do you any harm* based on the things I understand from this case, from this trial, and from what you told me today. Not only is she better off without you, not only is the public better off without you two together, but also you're probably better off without her.

(Emphasis added.) The sentencing condition and NCO are not exaggerated or excessive; they are limited solely to inappropriate contact between Vanslyke and the victim and do not extend his term of confinement. Nor do these restrictions depend on a finding of scienter. For these reasons, the sentencing condition and NCO are not a penalty (or punitive) for due process purposes and, accordingly, the trial court did not violate Vanslyke's due process rights when it did not give Vanslyke credit for the time he was subject to the previous sentencing condition and NCO for the same offense.

To bolster his due process argument, Vanslyke argues that we should presume improper judicial vindictiveness under the United States Supreme Court's holding in *Pearce*, 395 U.S. 711. This argument fails because the Supreme Court has since restricted the *Pearce* presumption of judicial vindictiveness to only those cases in which "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith*, 490 U.S. 794, 799, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) (quoting *U.S. v. Goodwin*, 457 U.S. 368, 373, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (internal citation omitted); *see also Brown*, 193 Wn.2d at 288-90 (acknowledging the line of cases limiting the *Pearce* presumption of

8

vindictiveness). If no reasonable likelihood exists, the defendant must prove "actual vindictiveness." *Smith*, 490 U.S. at 799-800. Further, the presumption does not apply where a greater sentence is imposed after trial than was imposed after a guilty plea because "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" at trial. *Id.* at 801.

Here, there is nothing in the record indicating a "reasonable likelihood" that the sentencing court acted with vindictiveness at the August 9, 2022, resentencing hearing. To the contrary, the court imposed the same sentence it originally imposed on the felony count: 60 months of incarceration with an accompanying five-year no-contact sentencing condition and concomitant NCO. Also, the new sentencing condition and NCO were imposed after a trial, where the judge may have "gather[ed] a fuller appreciation" of Vanslyke's relationship with the victim and the nature of the offense than when he previously accepted Vanslyke's guilty plea. *See Smith*, 490 U.S. at 801. Thus, even assuming the sentencing condition and NCO are a penalty, Vanslyke has not established, as he must, that the trial court acted with actual vindictiveness.

Vanslyke relies on *Goodwin*, 457 U.S. at 373, for the proposition that "[a]n increased penalty in the due process context is any 'action detrimental to the defendant.'" Vanslyke's reliance on *Goodwin* is misplaced. The United States Supreme Court there addressed prosecutorial vindictiveness, not whether a court-imposed restriction short of confinement is a "penalty." *See Goodwin*, 457 U.S. at 373. Contrary to Vanslyke's assertion, *Goodwin* stated that "in *certain* cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive

9

motive." *Id.* (emphasis added). The Court explained that this presumption applies "only in cases in which a reasonable likelihood of vindictiveness exists." *Id.*

Properly construed, *Goodwin* supports our conclusion that not every governmental action "detrimental to the defendant . . . after the exercise of a legal right" constitutes a penalty for due process purposes. Rather, the action must be punitive, and the presumption of a vindictive motive in punishing the defendant only exists where a "reasonable likelihood of vindictiveness exists." *Id.* Vanslyke's sentencing condition and NCO are not punitive, and the trial court did not act with vindictiveness. For all these reasons, we decline to find a due process violation.

C.    *Equal Protection*

Vanslyke claims the trial court violated his equal protection rights by subjecting him to a harsher sentence than a defendant who does not successfully appeal their conviction. We disagree.

Equal protection requires that similarly situated individuals receive similar treatment under the law. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. 1, § 12. In determining whether a defendant's equal protection rights have been violated, courts employ rational basis review when, as here, a classification does not involve a fundamental right or suspect class. *Harris*, 171 Wn.2d at 462-63 (quoting *State v. Harner*, 153 Wn.2d 228, 235-36, 103 P.3d 738 (2004)). "Under rational basis review, a party challenging the application of a law as violating equal protection principles has the burden of showing that the law is irrelevant to maintaining a state objective or that it creates an arbitrary classification." *Id.* (quoting *State v. Simmons*, 152 Wn.2d 450, 458, 98 P.3d 789 (2004)) (internal quotation marks omitted). Rational basis review is a deferential standard of review. *Id.* Equal

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

protection does not impose an absolute bar to the imposition of a more severe sentence upon retrial because resentencing involves issuing a new sentence, rather than increasing an existing sentence, and the result "depend[s] upon a particular combination of infinite variables peculiar to each individual trial." *Pearce*, 395 U.S. at 722-23 (overruled on other grounds).

Applying these legal principles here, Vanslyke's equal protection argument fails because he does not show, as he must, that the trial court's imposition of a five-year no-contact sentencing condition and NCO was irrelevant to maintaining a state objective or created an arbitrary classification between him and defendants who do not successfully appeal their conviction. Upon remand, Vanslyke was treated the same as any other defendant who had never appealed. He was recharged, tried by a jury, convicted, and resentenced. The duration of the trial court's new sentencing condition and NCO are relevant to maintaining the court's objective that Vanslyke not contact the victim throughout his entire sentence of incarceration. Therefore, we decline to find an equal protection violation.

D.      *Ineffective Assistance of Counsel*

Vanslyke argues that his trial counsel was ineffective because they failed to object to the expiration dates of the sentencing condition and NCO. We disagree.

"A successful ineffective assistance of counsel claim requires the defendant to show that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance." *In re Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Vanslyke's ineffective assistance argument fails because, even if his lawyer had objected to the expiration dates of the sentencing condition and NCO, his argument that "the expiration date of the order must take into account

11

No. 84430-0-I/12

time already served subject to the order following entry of the initial sentence" fails as a matter of statutory and constitutional analysis (as the discussion above shows). Thus, even if his lawyer's performance was deficient, Vanslyke has not established that he was prejudiced by the deficient performance. Accordingly, we decline to grant relief on this basis.[4]

III

We affirm Vanslyke's judgment and sentence and the corresponding NCO.

_Feldman, J._

WE CONCUR:

_Díaz, J._          _Mann, J._

---

[4] Our unpublished decision in *State v. Briggs*, No. 83278-6-I (Wash. Ct. App. Nov. 14, 2022) (unpublished), http://www.courts.wa.gov/opinions/pdf/832786.pdf, is also persuasive here. There, we rejected Briggs' statutory, due process, equal protection, and ineffective assistance of counsel arguments on similar facts. Although *Briggs* is an unpublished opinion, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c). We adopt the reasoning in *Briggs* as set forth in the text above.