# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87429-2-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| LARRY JEROME GUDGEL, | |
| Appellant. | |

FELDMAN, J. — Larry Jerome Gudgel appeals his convictions for arson in the second degree, domestic violence; arson in the second degree; and domestic violence felony violation of a court order. Gudgel argues (a) the trial court abused its discretion by admitting under ER 404(b) vulgar and threatening voicemails he left the victim, (b) the State failed to present sufficient evidence to support the domestic violence aggravator, (c) the trial court abused its discretion by admitting witness testimony in violation of ER 1002, and (d) the trial court abused its discretion by denying his motion for a mistrial. Because Gudgel has not established an entitlement to relief, we affirm his convictions.

I

Gudgel and Michelle McClain met in 2017 and began a serious relationship that lasted about two and a half years. When their relationship ended in August

2019, Gudgel believed he was entitled to retain possession of McClain's late father's Ford F150 truck, which McClain had stored on Gugdel's property while they were dating. Gudgel refused to let McClain take the truck back even though McClain's late father had bequeathed the truck to McClain's nephew in his will. Gudgel took the lug nuts off the truck's wheels so it could not be moved. Eventually, McClain decided to "act like [she] was going to get back with" Gudgel so she could get the truck back. One day when Gudgel was running an errand, McClain stayed at his house, found the truck's lug nuts, put them back on the truck's wheels, and drove the truck away.

After McClain took the truck back, Gudgel was upset and called and texted McClain "all the time," sometimes 20 times a day, demanding she return the truck to him. He also left McClain 16 voicemails calling her vulgar, demeaning names and threatening her if she did not return the truck to him. In the following months, Gudgel was convicted of three crimes related to McClain. First, in January 2020, Gudgel forged a document purporting to show that McClain transferred the truck's title to him. Based on this forgery, Gudgel was convicted of attempted second degree identity theft. Second, in February 2020, despite being subject to a no-contact order that prohibited him from having contact with McClain, Gudgel continued to call McClain about her father's truck and called her work "so much that [she] couldn't even do [her] job." Based on this conduct, Gudgel was convicted of domestic violence misdemeanor violation of a court order. Third, on April 1, 2020, Gudgel violated the no-contact order again by going to McClain's apartment in Fall City. On that day, McClain discovered her vehicle smelled of gasoline and

had been hit in the rear. Based on his presence at McClain's home that day, Gudgel was convicted of domestic violence felony violation of a court order. A five-year no contact order was then issued prohibiting Gudgel from coming within 1,000 feet of McClain or her residence or vehicle, and Gudgel was sentenced in November 2020 to 22.5 months in prison with 12 months of community custody.

On April 11, 2023, McClain woke up around 12:30 a.m. to the sound of her car alarm going off. McClain tried to turn off the car alarm using the key fob. When the alarm kept sounding, she went to her bedroom window and saw that her car was on fire. McClain's landlord, Gregory Larson, woke up to the sounds of McClain screaming about the fire and saw that his car was also on fire. McClain and Larson called 911, and firefighters responded and extinguished the fires. Antonio Boozer, a fire investigator with King County Sherriff's Department, concluded the fire was incendiary.

Surveillance footage captured the incident. The footage shows a van driving slowly past the house and then driving back past the house the other way. Then the video shows two people crossing the street, walking up Larson's driveway, and lighting Larson's car on fire. McClain and Larson both testified they recognized Gudgel as the person on the surveillance footage who was wearing the lighter colored hoodie. McClain recognized Gudgel from his gait, frame, movement, and clothing. Larson also recognized Gudgel from his posture and clothing based on seeing Gudgel regularly in and around his house. After Larson's car started burning, Gudgel walked to McClain's car, which was parked on the

street, and lit her car on fire. The two people then ran away. Both cars were destroyed and deemed a total loss.

During law enforcement's investigation, Detective Anthony Palmer with the King County Sherrif's Office conducted surveillance of Gudgel and observed him enter a bluish-purple Dodge Caravan parked in front of Gudgel's relative's house and drive off in it. Fire Investigator Boozer testified that the van had similar features to the vehicle captured on surveillance footage that drove by McClain's apartment on April 11, 2023. For example, both vehicles had black trim pieces all the way across from the front window to the rear window, both vehicles had a little diamond shape where the side mirrors are, both vehicles had similar door trim on the bottom, and both vehicles had similar indentions.

Gudgel was charged with arson in the second degree, domestic violence; arson in the second degree; and domestic violence felony violation of a court order. The case proceeded to a jury trial that was bifurcated into two phases. In the first phase of the trial, the jury found Gudgel guilty of two counts of arson in the second degree and domestic violence felony violation of a court order. The jury also returned a special verdict finding that Gudgel and McClain were intimate partners prior to or at the time Gudgel burned McClain's vehicle. During the second phase of the trial, the jury heard testimony regarding aggravating circumstances surrounding the first arson charge. The jury was provided with additional instructions, and returned special verdicts finding that the arson related to McClain's vehicle was an aggravated domestic violence offense and that Gudgel had previously been convicted twice for violating the provisions of a court order.

Based on these special verdicts, the trial court imposed an exceptional sentence totaling 96 months in prison. This timely appeal followed.

II

A.      ER 404(b)

Prior to trial, Gudgel moved to exclude evidence of the 16 voicemails he left McClain in August 2019 demanding that she return the truck. The trial court initially excluded the voicemails. Following a mistrial, a new judge was assigned to the matter. That judge agreed to reconsider the previous ruling, listened to all 16 voicemails, and concluded that it would admit 5 of the 16 voicemails. Like the others, these 5 voicemails include numerous threats, vulgar insults, and expletives. Gudgel, for example, called McClain a "lying whore," threatened "You'll get what's coming to you," and repeatedly demanded "give me my truck back." Gudgel argues the trial court abused its discretion in admitting these 5 voicemails under ER 404(b).

Under ER 404(b), evidence of a defendant's other crimes, wrongs, or acts is "presumptively inadmissible to prove character and show action in conformity therewith." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). But such evidence may be admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). To admit evidence of a defendant's prior bad acts over an ER 404(b) objection, the trial court must conduct a four-part analysis. *State v. Slater*, 197 Wn.2d 660, 677, 486 P.3d 873 (2021). This analysis requires the trial court to "(1) find by a preponderance of the evidence the misconduct actually

occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence." *Id.* (quoting *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009)). As to the fourth prong, for other act evidence to be admitted, "its probative value must be shown to outweigh its potential for prejudice." *State v. Vazquez*, 198 Wn.2d 239, 257, 494 P.3d 424 (2021). The burden of demonstrating a proper purpose is on the proponent of the evidence. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). We review a trial court's admission of evidence over an ER 404(b) objection for abuse of discretion, which occurs when the court's decision is manifestly unreasonable or based on untenable reasons or grounds. *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017).

Contrary to Gudgel's argument, the trial court's ruling admitting the five voicemails under ER 404(b) is not manifestly unreasonable or based on untenable reasons or grounds. The court thoroughly explained its analysis. Addressing the first part of the four-part test, the court determined, "I think there's been acknowledgement the State can prove these by preponderance of the evidence I just listened to the tapes." Turning to the second part of the four-part test, the court stated, "Evidence of prior threats is admissible to admit motive." Regarding the third part of the four-part test, the court noted "when the evidence is circumstantial, the Courts have said motive evidence is particularly probative, which it sounds like we have just, essentially, circumstantial evidence . . . . So I think it is relevant for

. . . for motive." These three parts of the four-part analysis are not seriously in dispute.

Addressing the final part of the four-part test—the central dispute here—the court appropriately balanced the probative value of the evidence and its potential for prejudice. The court found the probative value of Gudgel's voicemails was "pretty high." Indeed, precisely because of their vulgar and threatening content, the voicemails show that Gudgel was upset that McClain took back her father's truck and provide strong evidence of his motive for committing arson. Having found the voicemails had a "pretty high probative value," the court turned to the potential for prejudice. Although the voicemails are vulgar and threatening, the court limited the number of voicemails the State could introduce and only admitted 5 voicemails that focused on the dispute about McClain's late father's truck. The court explained it chose the 5 most probative voicemails to limit the cumulative effect that 16 voicemails could have.

Additionally, the court mitigated any potential prejudice stemming from the voicemails by giving a limiting instruction. *See State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) ("Where evidence is admissible for a proper purpose, the party against whom the evidence is admitted is entitled, upon request, to a limiting instruction."). The instruction provides as follows:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of prior voicemails and may be considered by you only for the purpose of determining motive. It may not be considered by you for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

We presume the jury followed this instruction. *Arredondo*, 188 Wn.2d at 264. Thus, the trial court properly weighed the probative value against the prejudicial effect of the evidence and mitigated any potential prejudice by giving a limiting instruction. On this record, the trial court did not abuse its discretion in admitting the five voicemails.

Despite this, Gudgel argues the three-year passage of time between when he left the voicemails and when he committed the charged arson decreased the probative value of the voicemails. Gudgel relies on *Powell*, *State v. Baker*, 162 Wn. App. 468, 259 P.3d 270 (2011), and *State v. Sargent*, 40 Wn. App. 340, 698 P.2d 598 (1985), to support his argument, but these cases do not establish a per se temporal requirement for ER 404(b) evidence to be admissible. Rather, in *Baker* and *Sargent*, the court merely mentioned the timing of the defendant's prior acts along with other considerations in determining the evidence's admissibility. That is precisely what the trial court here did: it correctly indicated that the passage of time was a relevant consideration in determining the probative value of the voicemails, but was not dispositive and did not decrease the probative value of the voicemails to the point that, on balance, they were unduly prejudicial. The trial court did not abuse its discretion in so ruling.

B. Domestic Violence Aggravator

The trial court instructed the jury that to find the second degree arson was an aggravated domestic violence offense, the State must prove beyond a reasonable doubt that (1) Gudgel and McClain were intimate partners and (2) the offense was part of an "ongoing pattern of psychological, physical, or sexual abuse

manifested by multiple incidents over a prolonged period of time." Gudgel argues the State failed to present sufficient evidence to prove the second degree arson was part of an ongoing pattern of domestic violence as required by the jury instructions. For the reasons that follow, we reject this argument.

"The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt." RCW 9.94A.537(3). We use the same standard of review for the sufficiency of the evidence of an aggravating circumstance as we do for the sufficiency of the evidence of the elements of a crime. *State v. Zigan*, 166 Wn. App. 597, 601-02, 270 P.3d 625 (2012). Under this standard, we must assess "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Zghair*, 4 Wn.3d 610, 619-20, 567 P.3d 1 (2025) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Our standard is "'highly deferential to the jury's decision.'" *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024) (quoting *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014)). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Here, sufficient evidence existed for the jury to find that Gudgel engaged in an "ongoing pattern" of abuse. At trial, the State presented evidence that Gudgel was previously convicted of domestic violence misdemeanor and felony violations of a court order. McClain testified that Gudgel was verbally abusive to her over

the course of their two-year relationship and his abusive conduct still impacts her. Additionally, during the first phase of the bifurcated trial, the jury found that Gudgel burned McClain's car and violated a court's no contact order on April 11, 2023. A reasonable jury could find beyond a reasonable doubt that these multiple incidents spanning seven years constituted an ongoing pattern of abuse over a prolonged period of time. Thus, we conclude the State presented sufficient evidence to prove the second degree arson was part of an ongoing pattern of domestic violence as required by the jury instructions.

Gudgel argues we should interpret the phrase "ongoing pattern" of abuse in the underlying statute, RCW 9.94A.535(3)(h),[1] under the rule of lenity and "adopt the interpretation most favorable to" him, but his reliance on the rule of lenity is misplaced. "[C]ourts may apply the rule of lenity only where a statute is ambiguous such that 'it is subject to two or more reasonable interpretations.'" *State v. Vanslyke*, 28 Wn. App. 2d 483, 489, 536 P.3d 1155 (2023) (quoting *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993)). Like the trial court's jury instruction, quoted above, RCW 9.94A.535(3)(h)(i) defines "ongoing pattern" by stating that such a pattern is "manifested by multiple incidents over a prolonged period of time." Gudgel has not shown the phrase "ongoing pattern" is ambiguous. Accordingly, the rule of lenity does not apply. Gudgel also argues the three-year time period between his criminal conduct in February and April 2020 and the April 2023 arson and violation of a court order broke any ongoing pattern of abuse. But

---

[1] RCW 9.94A.535(3)(h) lists the following as an aggravating factor: "The current offense involved domestic violence, as defined in RCW 10.99.020 . . . and one or more of the following was present: (i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time."

as explained above, a reasonable jury could conclude Gudgel's actions spanning from 2017 to 2023 constituted an ongoing pattern of abuse even with a temporal pause in the active abuse McClain suffered. That is especially so when the evidence is viewed favorably to the State, as controlling case law requires. Gudgel's contrary argument fails.

C.     ER 1002

During the second phase of the trial, McClain testified that on April 1, 2020, she woke up to a bang and, when she went outside to her car, she smelled gasoline and saw that "the back of my car was all like somebody had ran into it." The prosecutor asked McClain if she had reviewed surveillance footage on that date and asked "what did that surveillance footage show?" Over defense counsel's best evidence objection, the trial court permitted McClain to testify that the surveillance footage "showed Mr. Gudgel with a gas can going over to my car and dumping gasoline on it. And then, a few minutes later . . . backing into my car." In closing argument, the State highlighted this testimony that McClain "saw Mr. Gudgel on surveillance cameras dumping gasoline on her car." Gudgel claims this testimony violated ER 1002. Gudgel is correct, but the error was harmless.

ER 1002, known as the "best evidence rule," states:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by rules adopted by the Supreme Court of this state or by statute.

Relatedly, ER 1004 then provides:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

**(a) Original Lost or Destroyed**.  All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

**(b) Original Not Obtainable**.  No original can be obtained by any available judicial process or procedure; or

**(c) Original in Possession of Opponent**.  At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

**(d) Collateral Matters**.  The writing, recording, or photograph is not closely related to a controlling issue.

We review a trial court's evidentiary rulings regarding these issues for abuse of discretion.  *State v. Burke*, 196 Wn.2d 712, 741, 478 P.3d 1096 (2021).

The trial court abused its discretion here.  Contrary to ER 1002, the State sought to prove the contents of the security footage through McClain's testimony, but it neither introduced the security footage at trial nor established that it satisfied one of ER 1004's exceptions to ER 1002's requirement that it introduce the footage.  The State argues the best evidence rule is not applicable here because McClain testified from personal knowledge of the April 1, 2020 incident.  It relies on *D'Angelo v. U.S.*, 456 F. Supp. 127 (D. Delaware 1978), but such reliance is misplaced.  There, the defendant moved to strike a witness's testimony regarding financial records because the written records containing the information were available but not produced at trial.  *Id.* at 131.  The trial court overruled the defendant's objection because the witness testified from personal knowledge and did not purport to testify as to the contents of any document.  *Id.*  The witness knew of the facts underlying his testimony because he had personally attended company

meetings and participated in the preparation of the financial records. *Id.* Thus, even though the written records would have established the same facts as those that the witness testified to, the best evidence rule was not violated. *Id.* By contrast, here, in direct response to the prosecutor's question of "what did that surveillance footage show," McClain specifically testified as to the contents of the surveillance footage. Unlike the witness in *D'Angelo*, McClain had no personal knowledge of the events captured on the footage independent of her review of the footage. Thus, *D'Angelo* is distinguishable from the facts of this case and in fact supports the conclusion that the trial court abused its discretion in admitting McClain's testimony.

Nevertheless, the trial court's error was harmless. We apply the nonconstitutional harmless error standard, under which the defendant must show that "'within reasonable probabilities . . . the outcome of the trial would have been materially affected' had the error not occurred." *State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Here, the error occurred during the second phase of the trial after the jury had convicted Gudgel of two counts of arson and one count of domestic violence felony violation of a court order and when the State was attempting to prove the domestic violence aggravator. To that end, the State introduced Gudgel's November 2020 statement on his plea of guilty to the April 1, 2020 felony violation of a court order, in which Gudgel admitted that he went to McClain's home on April 1, 2020. Additionally, as discussed in section II.B above, the State presented evidence that Gudgel was previously convicted for domestic

violence misdemeanor and felony violations of a court order, that Gudgel was verbally abusive to McClain over the course of their relationship, and that Gudgel burned McClain's car and violated a court's no contact order on April 11, 2023. Considering this evidence together, we conclude Gudgel has not shown the outcome of the second phase of the trial would have been materially different had the trial court sustained defense counsel's objection to McClain's testimony.

D.    Motion for Mistrial

Gudgel identifies four instances of objectionable testimony during the second phase of the trial that he argues affected the outcome of the trial and warranted a mistrial.  First, Thomas Devine, a supervisor at the King County Sheriff's Office Fire Investigation Unit, testified Gudgel was identified as the individual involved in the April 1, 2020 incident that resulted in gasoline being poured on McClain's vehicle.  The trial court sustained defense counsel's objection based on lack of personal knowledge and struck the testimony.  Second, McClain testified about an incident in February 2020 when Gudgel hit her vehicle with a car while trying to take back her late father's truck.  The trial court sustained defense counsel's objection based on lack of foundation.  Third, the prosecution asked McClain whether her relationship with Gudgel and the prior incidents caused her distress and still impacted her.  In response, McClain testified that the prior incidents caused her "[a] lot of distress" and she still "had a lot of stress worried about him getting out and what he would do next."  Defense counsel objected and requested a sidebar.  After the sidebar, the trial court sustained the objection and struck McClain's testimony.  And fourth, McClain testified about what the

- 14 -

surveillance footage on April 1, 2020 showed. As discussed in section II.C above, the trial court erroneously overruled defense counsel's best evidence rule objection.

Following the close of evidence in the second phase of the trial, the defense moved for a mistrial based on the first three instances of improper witness testimony detailed above. The trial court denied the motion, finding the improper testimony was not so prejudicial as to warrant a mistrial. As to Devine's testimony regarding the April 1, 2020 attempted arson, the court concluded his stricken testimony was corroborated by McClain's testimony regarding the April 2020 incident. Because McClain testified to the same facts, including that her vehicle smelled of gasoline, the court concluded Devine's testimony was not so prejudicial as to warrant a mistrial. As to the February 2020 incident, the court concluded the testimony was not prejudicial because it was "very brief" and unclear. And as to McClain's testimony about her fear of Gudgel "getting out," the court concluded that while references to a defendant being in custody can cause prejudice, this reference was not so prejudicial as to deprive Gudgel of a fair determination on the issue of the domestic violence aggravator. Gudgel argues the trial court abused its discretion in so ruling.

Trial courts should grant a mistrial only when "the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A denial of a motion for mistrial should be overturned only when there is a substantial likelihood that the prejudice affected the verdict. *State v. Gamble*, 168 Wn.2d 161,

177, 225 P.3d 973 (2010). In determining the effect of a trial irregularity, we examine (1) its seriousness, (2) whether it involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard it. *Id.* We consider these factors with deference to the trial court because the trial court is in the best position to discern prejudice and has wide discretion to cure trial irregularities resulting from improper witness statements. *Id.* Accordingly, we review the trial court's denial of a motion for a mistrial for abuse of discretion. *Id*.

Applying these legal principles, we hold the trial court did not abuse its discretion in denying Gudgel's motion for a mistrial for three distinct reasons. First, the potential prejudice of the testimony was lessened because it occurred during the second phase of the trial after the jury had convicted Gudgel of two counts of arson and one count of domestic violence felony violation of a court order. Second, regarding the testimony revealing Gudgel was in prison, we rejected a similar argument in *State v. Condon*, 72 Wn. App. 638, 649-50, 865 P.2d 521 (1993), noting "the fact that someone has been in jail does not necessarily mean that he or she has been convicted of a crime" and is thus "not so serious as to warrant a mistrial." Third, and perhaps most important here, the court properly sustained defense counsel's objection to all three instances of objectionable testimony raised during the defense's motion for a mistrial and struck much of the offending testimony. We presume that jurors follow any curative instructions and disregard improper evidence when so instructed. *Gamble*, 168 Wn.2d at 178. On this record, the trial court did not abuse its discretion in concluding that the improper testimony, in context, was not so serious as to warrant a mistrial.

Lastly, Gudgel argues, in the alternative, that the best evidence violation and improper testimony detailed above amounted to cumulative error that prejudiced the result. "For relief based on the cumulative error doctrine, the defendant must show that while multiple trial errors, 'standing alone, might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial.'" *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017) (quoting *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)). But "where there are few or no errors, and the errors, if any, have little or no effect on the outcome of the trial, reversal is not required." *State v. Ritchie*, 24 Wn. App. 2d 618, 644 n.9, 520 P.3d 1105 (2022) (citing *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006)). Based on a careful review of each instance of improper testimony and alleged errors in the context of the entire trial, we conclude no cumulative error exists that would necessitate a new trial or resentencing.

III

Gudgel has not established an entitlement to relief. Accordingly, we affirm his convictions.

Feldman, J.

WE CONCUR:

Díaz, J.

Birk, J.